UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:12-CV-00191-TBR

HUTSON, INC.            Plaintiff/Counter-Defendant

v.

WALTER C. WINDSOR            Defendant/Counter-Claimant

## MEMORANDUM OPINION

This matter comes before the Court upon the Motion for Partial Summary Judgment of Plaintiff Hutson, Inc.'s as to Count 1 of its Complaint. (Docket No. 32.) Defendant Walter C. Windsor has responded, (Docket No. 44), and Hutson has replied, (Docket No. 46). Fully briefed, this matter is ripe for adjudication. For the reasons set forth below, the Court will GRANT Hutson's Motion for Partial Summary Judgment.

### Factual Background

This matter concerns various claims made by Hutson against Windsor in connection with an unsuccessful business deal. Until late 2010, Windsor served as president and shareholder of Premier Development Company, Inc. ("Premier"), an international agricultural equipment and parts corporation. In the course of its business, Premier occasionally patronized Huston, purchasing agricultural equipment and John Deere parts—and ultimately accumulating a debt nearing $100,000.00 on past due invoices.

The parties characterize the next phase of their relationship differently. According to Hutson, in light of Premier's precarious financial situation, Huston agreed to purchase certain articles of Premier's inventory, hire Windsor, and provide him with a $250,000.00 loan to strengthen his efforts to settle his debts. (Docket No. 32-1 at 2.) As a result, on August 19, 2011, the parties consummated a series of agreements ("the Agreements"), including an Employment Agreement, an Inventory Sales Agreement,

and a Promissory Note ("the Note"). (*See* Docket Nos. 1-1, 1-2, & 1-3.) By executing the Employment Agreement, Windsor agreed to work exclusively as a sales representative for Hutson. The Employment Agreement further included a covenant not to compete. (Docket No. 1-2.)

Windsor admits the consummation of these agreements. By contrast, however, he contends that Hutson approached him with the proposed deal in order to allow the Company to expand to the international agricultural parts market, with Windsor to spearhead the expansion. (Docket No. 43 at 5.) Windsor emphasizes that Barry Carson of Hutson forecasted a flourishing business relationship, having estimated that the newly-formed partnership would "exceed [Windsor's] projections by 25% minimum by year 2013" in a "nearly limitless environment." (Docket No. 43-1 at 6.) Windsor further contends that Carson promised him a great deal of independence and financial support by offering credit, financing, and service to qualified customers. Carson ultimately projected that Windsor's earned commission at Hutson would far exceed his income at Premier. Windsor claimed that he relied upon these representations in agreeing to the Employment Agreement and the Note, believing that the sale proceeds and his own commission "would be more than sufficient to pay off the note, and certainly make any payments due on the note." (Docket No. 43 at 7.)

Whatever Windsor joined co-maker Windmill Investment Group, Inc. ("Windmill") in executing the Note with Hutson, allegedly to strengthen efforts to repay Premier's outstanding debts and as consideration for the purchase of assets, Premier's customer base, and Windsor's business knowledge. (*See* Docket No. 1-1.) Windsor and Windmill agreed to repay the principal sum with interest at the rate of five percent per annum, to be satisfied with monthly payments of $4,807.58 beginning on January 1, 2012, and continuing until December 1, 2017. Any payment overdue for over fifteen days would be

increased by an amount equal to five percent of the amount of the overdue payment. Windsor and Windmill assumed joint and several liability to repay the Note's full amount.[1] (Docket No. 1-1 at 2.)

Hutson now alleges that Windsor failed to fulfill his obligations pursuant to the Note, having paid only $10,883.19 to date. On October 29, 2012, Hutson notified Windsor of his default and noted that $264,709.80 was due. According to Hutson, Windsor has made only one partial payment since the correspondence of October 29, 2012, in the amount of $1,027.65. Huston contends that as of July 31, 2014, the amount due and owing on the Note totals $322,070.52; the Company argues that interest continues to accrue at 10% per annum and late fees continuing to accrue at 5% of the amount of the overdue payment. It now moves for Partial Summary Judgment on its claim alleging Windsor's default on the Note.

**Legal Standard**

Summary judgment is appropriate where the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of

---

[1] Almost a year later, Windmill filed a Chapter 11 petition in the United States Bankruptcy Court for the Western District of Texas on August 7, 2012. According to the Note, the bankruptcy petition constituted an event of default, thus increasing the rate of interest to the entire unpaid principal balance from five percent to ten percent per annum. (Docket No. 1-1 at 3.) Moreover, the Note's terms render the entire principal balance and all accrued interest due upon default, at Hutson's option. (Docket No. 1-1 at 3.)

his position; he must present evidence on which the trier of fact could reasonably find for him. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "[T]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996), abrogated on other grounds by *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312 (6th Cir. 2012).

**Analysis**

Hutson contends that it is entitled to partial summary judgment as to Windsor's liability on the Note, as there is no genuine factual dispute that Windsor breached his obligations pursuant to the Note's terms. Indeed, "[a] plaintiff note-holder seeking judgment on a promissory note can win summary fjudgment on a showing that the defendant debtor executed and defaulted on the note." *Publishers Press, Inc. v. Montage Media Corp.*, 2011 WL 4587568 at *2 (W.D. Ky. Sept. 30, 2011) (citing *Proctor v. U.S. Dept. of Educ.*, 196 F. App'x 345, 347-48 (6th Cir. 2006); *United States v. Zahrn*, 8 F. App'x 465, 466 (6th Cir. 2001)); *accord Colony Creek, Ltd. v. Resolution Trust Corp.*, 941 F.2d 1323, 1325 (5th Cir. 1991) ("[S]uits to enforce promissory notes are among the most suitable classes of cases for summary judgment.") (quotation omitted).

Windsor does not dispute that he entered into the Agreements, including the Note, but raises the defense of fraudulent inducement: that is, Windsor argues that he would have neither entered into the Note nor accepted employment with Hutson but for Carson's representations. He contends that Hutson did not provide credit terms to Windsor's customers as promised, but instead required Windsor to locate buyers willing to pay for parts and equipment in cash before the products' shipment. (Docket No. 43 at 7.) Windsor also argues that Hutson required customers to provide more rigorous financing statements and Dunn & Bradstreet reports than what Premier had required, that Hutson's credit terms were no more favorable than those that Premier had provided, and that Hutson failed to provide the service, support, and

resources that it had promised to Windsor. (Docket No. 43 at 8.) Windsor attributes his failure to repay the loan to Hutson's misrepresentations.

Although Windsor argues that Hutson has failed to establish the absence of a genuine issue of material fact as to Windsor's charge of fraudulent inducement, Windsor misperceives the burden. When a plaintiff uses a summary judgment motion to challenge the legal sufficiency of an affirmative defense on which the defendant bears the burden of proof, the plaintiff may satisfy its Rule 56 burden by demonstrating a lack of evidence to support an essential element of the non-movant's case. "Conversely, when relying on an affirmative defense, a defendant who is faced with a summary judgment motion has the same burden as a plaintiff against whom a defendant seeks summary judgment": that is, the non-movant with the burden of proof "must produce sufficient evidence upon which a jury could return a verdict" favorable to him. *In re Wallace's Bookstores, Inc.*, 316 B.R. 254, 263 (Bankr. E.D. Ky. 2004) (quotations omitted).

Under Kentucky law, an action for fraudulent misrepresentation requires six elements: "(a) a material misrepresentation, (b) which is false, (c) known to be false or made recklessly, (d) made with inducement to be acted upon, (e) acted in reliance thereon, and (f) causing injury." *Wahba v. Don Corlett Motors, Inc.*, 573 S.W.2d 357, 359 (Ky. Ct. App. 1978); *accord United Parcel Serv. Co. v. Rickert*, 996 S.W.2d 464, 468 (Ky. 1999). The Court must determine whether Windsor has raised a genuine issue of material fact concerning his defense of fraudulent inducement such that a grant of summary judgment would be improper. Here, Windsor carries a particularly high burden, as claims alleging fraud must be proven by clear and convincing evidence. *See White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 946 (6th Cir. 1990) ("Where the allegation is fraud, summary judgment may be granted unless there is sufficient probative evidence produced which, if believed, would clearly and convincingly establish fraud."); *Fifth Third Bank v. Canfield*, 2013 WL 5966886 (W.D. Ky. Nov. 8, 2013) ("Where the allegation is fraud, summary judgment may be granted unless there is sufficient probative evidence produced which, if believed, would clearly and convincingly establish fraud.") (quotations omitted).

Kentucky law dictates that a claim for fraudulent misrepresentation

> cannot be predicated upon statements which are promissory in their nature when made and which relate to future actions or conduct, upon mere failure to perform a promise . . . or upon failure to fulfill an agreement to do something at a future time or to make good subsequent conditions which have been assured. Such nonperformance alone has frequently been held not even to constitute evidence of fraud.

*Mario's Pizzeria, Inc. v. Fed. Sign & Signal Corp.*, 379 S.W.2d 736, 740 (Ky. 1964) (quoting 24 Am. Jur. *Fraud and Deceit* § 267); *see also Steele v. Liberty Life Ins. Co.*, 2009 WL 1562940 (Ky. Ct. App. 2009) ("An accepted rule is, a misrepresentation, to be actional, must concern an existing or a past fact, and not a future promise, prophecy, or opinion of a future event, unless declarant falsely represents his opinion of a future happening.") (quoting *Kentucky Elec. Dev. Co.'s Receiver v. Head*, 68 S.W.2d 1, 3 (Ky. 1934)).

Here, Hutson's alleged assurances to Windsor were only predictions of future events—not statements of past or present material fact. Of course, the parties dispute the basis upon which the parties entered the agreements: Huston denies having made the lofty guarantees upon which Windsor claims to have relied. Despite this question, however, the Court perceives no issue of *material* fact. Perhaps Hutson did, in fact, make the alleged misrepresentations to Windsor; indeed, for purposes of summary judgment, the Court must assume that it did. Even so, however, each of the purported promises concerned only a promise of future action, at best, not representations of existing facts. *See Mario's Pizzeria*, 379 S.W.2d at 739.

Moreover, even if Hutson knew that its alleged promises to Windsor would never materialize, Windsor has produced no evidence in support of this assertion. To do so, he must avoid the constraints of the parol evidence rule, which bars evidence of oral statements or writings made prior to or contemporaneous with a written agreement that contradict, vary, or alter the language appearing in the document. *See, e.g.*, *Luttrell v. Cooper Indus., Inc.*, 60 F. Supp. 629, 631 (E.D. Ky. 1998). An exception to this general bar applies if the parol evidence is used to prove fraudulent inducement to enter into the agreement. *Bryant v. Troutman*, 287 S.W.2d 918, 920 (Ky. 1956). However, "parties may not base a

fraud in the inducement claim on their reliance on oral representations contrary to the terms of written agreements or disclaimers that they have acknowledged in writing." *Fifth Third Bank v. Waxman*, 726 F. Supp. 2d 742, 752 (E.D. Ky. 2010) (citation omitted). Here, the Agreements at issue clearly set forth the terms of Windsor's employment, none of which include the terms that he now claims were breached. He has identified no evidence that will overcome the express provisions of the Agreements that his attorney negotiated and that he signed.

Having failed to supply the Court with evidence beyond his own allegations that Hutson made the alleged statements, Windsor's affirmative defense of fraudulent inducement must fail. *See Steele*, 2009 WL 1562940 at *5 (explaining that a fraudulent inducement claim fails where a plaintiff cannot establish that his claim meets the exception to the fraud rule involving misrepresentations as to future intentions). Therefore, because Huston has satisfied its burden of setting forth sufficient facts as to Count I of its Complaint for Windsor's default of the Note, and Windsor has failed to present clear and convincing evidence to support his defense of fraudulent inducement, the Court will grant Hutson's Motion for Partial Summary Judgment. An appropriate Order will issue concurrently with this Opinion.